UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

A 16-cr-0347(3)-SS

**FILED**

JUL 2 4 2019

CLERK U S DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

OCHUKO SYLVESTER ERUOTOR
      Petitioner,

vs.

UNITED STATES OF AMERICA
      Respondent.

**A19CV0743**SS

A16-cr-0347(3)-SS

Honorable Sam Sparks
District Judge
Western District of Texas
501 West 5th Street
Suite 1100
Austin, Texas 78701

### PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO VACATE, SET ASIDE, OR CORRECT, PURSUANT TO TITLE 28 U.S.C. § 2255

NOW COMES, OCHUKO SYLVESTER ERUOTOR, hereinafter the ("Petitioner"), proceeding in this cause of action by pro se, and hereby respectfully submits this Motion for Section 2255 relief upon this Honorable Court.

Petitioner contend that the conviction and sentence in his case was imposed in violation of the Constitution and laws of the United States, or was otherwise unreasonable. Petitioner further submits that during the sentencing phase of this matter, he was denied his federal constitutional rights to the due process of law, and to the effective assistance of counsel. Petitioner also contend that the Court failed to have all of the facts that supported the enhancements in the case proven, using the preponderance of evidence standard, and to be sentenced to the appropriate reasonable term of imprisonment based on all of the available evidence.

## I. STATEMENT OF JURISDICTION

This Court has jurisdiction to entertain a Motion to Vacate, Set Aside, or Correct a prisoner's sentence pursuant to Title 28, United States Code, § 2255, et seq.

### A. STANDARD OF REVIEW

Section 2255 allows a prisoner in federal custody to move for relief from his conviction and sentence on grounds, "that the sentence was imposed in violation of the constitution or laws of the United States, or that the Court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. "28 U.S.C. § 2255.

In this context, a Petitioner "must demonstrate the existence of constitutional magnitude of an error which had a substantial and injurious effect or influence on the guilty plea or jury's verdict. Jackson v. United States, 683 F. Supp. 2d 514, 523 (4th Cir. 2009); quoting Hampress v. United States, 398 F.3d 855 (6th Cir. 2005). However, non-constitutional errors are generally limited "under the scope of § 2255 review." United States v. Cofield, 233 F.3d 405, 407 (6th Cir. 2000).

A Petitioner can prevail on a section 2255 motion that alleges non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of the due process." Bretch v. Abrahamson, 507 U.S. 619, 637-38, 113 S. Ct. 1710, 1721-22, 123 L. Ed. 2d 353 (1993).

As a general rule, any claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless the Petitioner shows:

(1) 'cause excusing the procedural default; and (2) 'actual prejudice" resulting from the error". United States v. Frady, 456 U.S. 152, 168 (1982); or demonstrates that he is "actually innocent." Bousley v. United States, 523 U.S. 614, 622 (1998). A claim of ineffective assistance of counsels, however, is not subject to the procedural default rule. Massaro v. United States, 538 U.S. 500, 504 (2003). A Court considering a claim of prosecutorial misconduct regarding the plea process or sentencing hearing must determine "whether the conduct so infected the plea process or sentencing hearing with unfairness as to make the resulting plea process or sentencing hearing a denial of due process." United States v. Scheetz, 293 F. 3d 175, 185 (4th Cir. 2002) (quotation ommitted).

To prevail on a Section 2255 motion, the petitioner bears the burden of proof by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). In addition, in reviewing a Section 2255 motion, the Court "takes as true the sworn allegation of facts set forth in the petition, unless those allegations are merely conclusory, contradicted by the record, or inherently incredible." Owens v. United States, 438 F.3d 48, 57 (1st Cir. 2007).

In reviewing a pro se motion, the Court is obligated to construe the pleading liberally. Estelle v. Gamble, 429 U.S. 97 (1976); Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594 (1972). This review ensures that pro se pleadings are given a fair and meaningful consideration. Eveland v. Dir. of C.I.A., 843 F.2d 46, 49 (1st Cir. 2008).

## II. STATEMENT OF THE ISSUES

1.  Defense Counsel rendered prejudicially deficient performance in violation of Petitioner's Fifth and Sixth Amendment right to effective representation when Counsel failed to vigorously challenge the "Sophisticated Laundering Enhancement"

recommended by the Probation Department and adopted by the District Court.

2.  Defense Counsel rendered prejudicially deficient performance in violation of Petitioner's Fifth and Sixth Amendment right to effective representation when Counsel failed to vigorously challenge the "Aggregate Role Assignment" recommended by the Probation Department and adopted by the District Court.

3.  Defense Counsel rendered prejudicially deficient performance in violation of Petitioner's Fifth and Sixth Amendment right to effective representation when Counsel failed to challenge the "Adjustment for Role in the Offense" recommended by the Probation Department and adopted by the District Court.

4.  Defense Counsel rendered prejudicially deficient performance in violation of Petitioner's Fifth and Sixth Amendment right to effective representation when Counsel failed to argue for Petitioner's "minor role" in the offense.

5.  Defense Counsel rendered prejudicially deficient performance in violation of Petitioner's Fifth and Sixth Amendment right to effective representation when Counsel failed to challenge the "Loss Amount Calculation" recommended by the Probation Department and adopted by the District Court.

6.  The Petitioner was prejudiced by the cumulative errors of Counsel's deficient performance.

### iii. STATEMENT OF THE CASE

On February 1, 2018, Petitioner pleaded guilty based on a plea agreement with the government and upon the advice of Defense Counsel; after being charged with conspiracy to commit Money Laundering, in violation of Title 18, United States Code, § 1956. On February 7, 2018, the Court accepted Eruotor's plea of guilty, but reserved acceptance of the plea agreement until sentencing.

Petitioner was initially arrested abroad on August 10, 2017.

On July 27, 2018, the Court sentenced the petitioner to a total term of one hundred sixty-eight (168) months.

Accordingly, this instant motion filed pursuant to Title 28, United States Code, § 2255(f)(1) is timely.

Petitioner had come to the conclusion after reviewing all the records in this case, that his attorney has not taken any meaningful step to challenge all the enhancements recommended by the probation department and adopted by the district court, including the probation department's calculation's of the loss amount pursuant to USSG § 2B1.1(b)(1)(J), thus, the attorneys performance was deficient in violation of the petitioner's Fifth and Sixth Amendment right to effective representation.

## IV. RELEVANT FACTUAL BACKGROUND

### A. DEFENSE COUNSEL FAILED TO CHALLENGE THE SOPHISTICATED LAUNDERING ENHANCEMENT PURSUANT TO USSG § 2S1.1(b)(3).

The Probation Department recommended that the instant offense involved sophisticated means because the coconspirators set up numerous bank accounts in various names using fictitious forms of identification. See PSI page 11, paragraph 39. On March 19, 2018, defense counsel sent a letter to the probation department objecting to issues in the PSI which may be in dispute, and for which a ruling may be called. One of the issues contested by the petitioner was the enhancement regarding "sophisticated laundering", see PSI paragraph 62. Defense Counsel cited "Application note 5 of U.S.S.G. § 2S1.1 which explains factors that tend to reflect "sophisticated laundering".

On July 27, 2018 at the sentencing hearing, the district court offered the defense counsel an opportunity to challenge the sophisticated laundering enhancement

recommended by the probation department. See, Sent. Tr. page 3, line 6. The
defense counsel did not present any strong argument to challenge the enhancement,
and the district court applied a two-level enhancement pursuant to USSG § 2S1.1
(b)(3).

Petitioner disagrees with (1), the district court's adoption of the enhancement as improper, (2) if defense counsel had vigorously challenged the enhancement at sentencing, the outcome would have been different.

Petitioner argues that, to apply a sophisticated laundering enhancement under U.S.S.G. § 2S1.1(b)(3), the court must find by a preponderance of evidence that the petitioner's offense involved "especially complex or especially intricate offense conduct, pertaining to the execution or concealment of an offense." "Application note 5 of USSG 2S1.1 explained factors that tend to reflect "sophisticated laundering":

> sophisticated laundering typically involves the use of
>
> i  fictitious entities;
>
> ii  shell corporations;
>
> iii  two or more levels (i.e., layering) of transactions,
> transportations, transfers, or transmissions, involv-
> ing criminally derived funds that were intended to
> appear legitimate; or
>
> iv  offshore financial accounts.

In this case, these factors do not apply, funds were received by the "launderers" from the fraud victims, and the "launderers" then transferred the funds to accounts controlled by Mark Egorho or Ejiro Efevwerha. Mr. Eruotor was not involved in shell corporations or fictitious entities. The transfers were not "layered" in that there was only one "layer" of laundering rather than multiple. Accounts controlled by the Canadians above are not "offshore" in that they are not

located in a tax heaven or other entity that does not abide by international bank transparency and anti-money laundering rules. This scheme essentially involved a large number of simple transactions, rather than using sophisticated means and multiple layers of complexity to hide the money laundered.

The district court and the probation department failed to make a proper finding because it offered no proof of complexity beyond the "minimum conduct required to establish a violation of [18 U.S.C.] § 1956 in its simplest form." United States v. Adepoju, 756 F.3d 250, 257 (4th Cir. 2014) (quoting United States v. Achuletta, 231 F.3d 682, 684-86 (10th Cir. 2000)), and the Court found no facts beyond such conduct. The Court thus clearly erred in applying the sophisticated laundery enhancement.

First, the probation department stated that the coconspirators regularly engaged in laundering funds, and laundered funds during an extended period of time from multiple sources, and generated a substantial amount of revenue in return for laundering funds.

Secondly, that the offense involved sophisticated means, wherein the coconspirators set up numerous bank accounts in various names using fictitious forms of identification.

Thirdly, withdrawing money from the account, coconspirators would send the money to other individuals in Canada and Nigeria.

Therefore, the district court did not make an adequate finding by the preponderance of the evidence that Mr. Eruotor engaged in any conduct that was "especially complex or intricate above and beyond typical § 1956 violations". Adepoju, 756 F.3d at 258. Further, even if Mr. Eruotor was involved in setting up bank accounts, those accounts would merely represent the "tools to commit laundering"

7

common in most schemes and indicate no sophistication justifying an enhancement. Adepoju, 756 F.3d at 258.

Thus, the probation argument in support of the sophisticated laundering enhancement fail to provide support for the district court's clear error. The facts it identifies in support of the enhancement are either unsupported by any evidence on the record. Those facts are merely elements inherent in fraud, as identified by Mr. Eruotor's letter in objection to the PSI report. United States v. Adepoju, 756 F.3d 250, 257 (4th Cir. 2014) (noting that "sophisticated requires more than the concealment . . . inherent in fraud").

Further, Adepoju's court noted that "sophisticated means enhancement not proper where defendant (1) stole victim's private information; (2) opened two bank accounts in the victim's name; (3) deposited money using counterfeit checks ostensibly obtained from a Bank of America official; (4) possessed five phones, one of which was used in commission of the scheme; (5) had extensive document forgery tools, including images of bank social security cards and blank checks. Therefore, the district court clearly erred in applying an enhancement for sophisticated means.

Finally, if the defense counsel had vigorously challenged the sophisticated laundering enhancement based on the enumerated arguments, the outcome would have been different.

### B. DEFENSE COUNSEL FAILED TO CHALLENGE THE 'AGGREGATING ROLE ASSIGNMENT' RECOMMENDED BY THE PROBATION DEPARTMENT

The probation department (PSI) alleges that Mr. Eruotor is responsible for a total of $3,950,927 of laundered funds. As previously mentioned by the probation report that Mr. Eruotor was a top-level associate in Canada, responsible for controlling the movement of laundered funds. That Eruotor hired numerous individuals to facilitate and further the conspiracy, and hired at least Augustine Ikolo, thus,

the probation department considers Mr. Eruotor, at the very least, an organizer of a criminal activity involving five or more participants, a four-level adjustment, pursuant to U.S.S.G. § 3B1.1a is warranted. See, PSI paragraph 43 and 64.

The district court offered the defense counsel an opportunity to present any evidence on the petitioner's objections, but defense counsel did not. See, Sent. Tr. page 3, line 2-10. Instead, defense counsel stated that he and the government have discussed to abandon the objection, and thus, the district court adopted the enhancement.

Mr. Eruotor respectfully objects to the factual assertions in paragraph 27 of the PSI which leaves the impression that he played a greater role in the offense than he actually did. First, he was not hired by Ejiro Efevwerha. Mr. Eruotor only received 5% of the transferred funds passed by Ikolo and not 10% as suggested by the probation department. Ikolo received more than Mr. Eurotor. Mr. Eruotor did not recruit Ikolo, Ikolo came to Mr. Eruotor asking to participate in the money laundering scheme.

Paragraph 28 of the PSI also, gave an impression that Mr. Eruotor was more involved in a leadership capacity than he really was. First, Mr. Eruotor did not himself "send a large percentage" of the funds to Canadian money launderers. Instead, Mr. Eruotor only provided account numbers to persons who participated in the money laundering scheme. These people would then transfer the funds to third parties but not to Mr. Eurotor. Mr. Eruotor would receive his 5% commission after the funds transfer was complete, but he did not himself decide on the percentage splits or receive and distribute the funds.

Mr. Eruotor also never participated in the "dummy e-mails and websites" mentioned in paragraph 28 of the PSI. Mr. Eruotor was never directly involved in

carrying out any of the fraudulent schemes by personally defaulting any of the victims.

Mr. Eruotor again respectfully objects to the factual assertions by the probation department regarding his role in the offense which makes him appear to have had a greater role in the offense than is warranted by the facts. First, Mr. Eruotor was only hired by Mark Egorho and not by Ejiro Efevwerha. Secondly, characterizing his role as "hiring" money launderers such as Ikolo exaggerates their relationship. Mr. Eruotor would pass along account information to money launderers such as Ikolo but was never the source of the account information, nor was he ever in charge or control of the funds. Only higher-up conspirators such as Egorho and Efevwerha were in charge of the funds and their ultimate distribution.

U.S.S.G. § 3B1.1 calls for a four-level enhancement for a leader or organizer, but a three-level enhancement for a manager or supervisor. Application note 4 to this guideline explains factors that provide guidance to which enhancement applies:

> [factors the Court should consider include the exercise of
> decision making authority-, the nature of participation
> in the commission of the offense, the recruitment of accom-
> plics, the claimed right to a larger share of the fruits of
> the crime, the degree of participation in planning or organ-
> ization of the offense, the nature and scope of the illegal
> activity, and the degree of control and authority exercised
> over others.]

In this case, Mr. Eruotor is clearly not a leader or organizer and objects to the four-level leadership role enhancement. He did not have a decision-making authority. The nature of his participation was primarily to pass messages and account information from Eghoro to the money launderers for only a 5% cut. Accomplices like Ikolo came to Mr. Eruotor rather than being recruited by Eruotor. He did not receive a large share of the fruits of the crime-only 5% of completed transactions. He was not involved in planning or organizing the offense - this was done by participants

like Egorho and Efevwerha. The nature and scope of illegal activity was straight-forward money laundery, and Mr. Eruotor did not have a great degree of control or authority because he was simply passing along account information for money transfers to the money launderers.

The "background" note in § 3B1.1 explains a reason for the enhancement: supervisors or managers "tend to profit more from it and present a greater danger to the public and/or are more likely to recidivate." In this case, Mr. Eruotor received a 5% cut of completed transactions, far less than most other participants in the scheme. Mr. Eruotor depended wholly on Mark Egorho in order to become invol-ved in his scheme and is not a person who is likely to be able to return to this type of fraud activity. Thus, the district court enhancement that the defendant was an organizer or leader of a criminal activity - that involved five or more participants or was otherwise extensive; thus, the four level pursuant to USSG § 3B1.1(a) is unwarranted.

If the defense counsel had challenged this enhancement at sentencing, the outcome would have been different.

### C. DEFENSE COUNSEL FAILED TO ARGUE FOR ADJUSTMENT OF ROLE IN THE OFFENSE DURING SENTENCING PURSUANT TO U.S.G. § 3B1.1(a).

U.S.S.G. § 3B1.1 calls for a four-level enhancement for a leader or organi-zer, but a three-level enhancement for a manager or supervisor. Application note 4 to this guideline.

The probation department argues that seventy victims of the hundred of individuals victimized as a result of the petitioner's participation in this conspiracy, for a total loss of $3,950,927. Therefore, with respect to the seventy victims identified, a total amount of $1,672,805.51 in restitution should be ordered, which is detailed in the restitution section of the PSI report. Further-

more, of the 70 victim letters sent, as of the report, 14 have returned. It is noted, 12 of these victims conveyed suffering a form of substantial financial hardship as a result of the instant offense. Furthermore, several victim choose to provide a statement regarding how this crime has affected them.

But the record will show that, the seventy victims in the instant report were not directly linked to Mr. Eruotor, but rather, the cumulative effect of the conspiracy as a whole. Mr. Eruotor was only hired by Mark Egorho and not by Ejiro Efevwerha, because Mr. Eruotor was personal friend with Mark Egorho and not with Efevwerha. Also, characterizing Mr. Eruotor's role as "hiring" money launderers such as Ikolo exaggerates their relationship. Mr. Eruotors only role is to pass along account information to money launderers such as Ikolo but was never the source of the account information, nor was he ever in charge or control of the funds.

U.S. Sentencing Guideline Manual § 1B1.1(a) instructs the Court to consider adjustments as appropriate related to victims, role, and obstruction of justice.

The probation office has no information indicating that Mr. Eruotor impeded or obstructed justice. The number of victims are not directly linked to Mr. Eruotor's involvement in the conspiracy and Mr. Eruotor was just an errand person between Mark Egorho and Ejiro Efevwerha, the two leaders in the conspiracy. There are no factual basis to assert that Mr. Eruotor was a leader or organizer because Mr. Eruotor had no great deal of knowledge concerning the scheme and its participants, besides passing informations. Petitioner is just a personal friend to Mark Egorho, one of the leader in the conspiracy.

Mr Eruotor argues that his role in this case is minor because he is "less culpable than most other participants and he has been held accountable with respect to caculating his base offense level. See United States v. Bernal-Benitez, 594 F.3d

1303, 1320 (11th Cir. 2010). The district court did not compare petitioner's conduct with that of the other participants in the offense and the fact that Mr. Eruotor's role is less than that of other participants engaged in the relevant conduct should be dispositive, because the PSI held him accountable for conduct that is much broader than his specific acts. Mr. Eruotor asserts that the facts of his particular case was a minor role. Petitioner asserts that he is substantially less culpable than the average participant in the conspiracy. See United States v. Villanueva, 408 F.3d 193, 203 (5th Cir. 2005). Section 3B1.2(b) provides for a two-level reduction in a defendant's offense level if he was a "minor" participant. A defendant's role is minor if he is "less culpable than most other participants", § 3B1.2, comment. (n.5), and substantially less culpable than the average participant." Id. comment. (n.3(A)); Villanueva, 408 F.3d at 203-04. Stated differently, the minor-role adjustment applies to defendants who are only peripherally involved in the crime. Villanueva, 408 F.3d at 204.

Since his arrest, Mr. Eruotor has consistently maintained that he was just an errand person for Mark Egorha and Efevwerha Ejiro. Mark was his personal friend, he was a messenger and not a money launderer. He just pass account number information from Egorho and Ejioro to others. He raised the issue again in his PSI Objections, but defense counsel declined to prosecute the objections at sentencing. He had never been involved in fraud cases before, he was just a family man and not a member of any organization.

D. **DEFENSE COUNSEL FAILED TO ARGUE AT SENTENCING THAT PETITIONER'S ROLE IN THE OFFENSE WAS "MINOR".**

Defense Counsel failed to argue that Mr. Eruotor's role in the offense of conspiracy to commit money laundery was minor pursuant to U.S.S.G. § 3B1.2(b).

On February 1, 2018 when Mr. Eruotor pleaded guilty in violation of 18 U.S.C. § 1956, he has maintained that he was drafted by his best friend Mark Egorho

and he was not a leader or organizer in the conspiracy. That his conduct was minor as he performed certain duty for the leaders in the conspiracy. He was just an errand person whose primary duty was just to pass information from Mark to the money launderers such as Ikolo. Mr. Eruotor believe that his limited role in the scheme, and his lack of prior criminal history which could have granted him a two point reduction to defendants who are found to be "substantially less culpable than the average participant in the criminal activity." U.S.S.G. § 3B1.2, comment. n.3(A). In Mr. Eruotor's case, a minor role reduction would have triggered further reductions. See United States v. Quintero-Leyva, 823 F.3d 519, 523 (9th Cir. 2016); see United States v. Rodriguez De Varon, 175 F.3d 930, 937 (11th Cir. 1999).

A participant with minor role is one who is "less culpable than most other participants, but whose role could not be described as minimal". § 3B1.2(b), cmt. n.5. District Court must measure a defendant's role in relation to the "relevant conduct" by a preponderance of the evidence. Id. at 934. Mr. Eruotor asserts that he was not hired by Efevwerha Ejiro, Mr. Eruotor only arranged money transfers for Mark Egorho. It is only 5% commission was attributable to him. Ikolo received more than Mr. Eruotor. Mr. Eruotor's conduct, when compared to that of other participants involved in the offense. Petitioner argues that if his attorney had made the proper argument at sentencing, he would have satisfied his burden to prove his eligibility and that the district court did not find any facts relevant to his case that would permit it to deny the reduction. See United States v. Cruickshank, 837 F.3d 1182, 1192 (11th Cir. 2016), cert. denied, 137 S. Ct. 1435, 197 L. Ed. 2d 651 (2017). We have cautioned district court against any per se rules for a minor reduction. Cruickshank, 837 F.3d at 1194.

The Court in Cruickshank disapproved of the district court's suggestion that

the drug quantity involved in the offense was so large "that no participant in the scheme could ever have been eligible for a minor-role reduction. See Rodriguez De Varon, 175 F.3d at 945. Mr. Eurotor argues that the total amount attributable to his conduct was $670,000.00. See Sent. Tr. page 4, line 7. Coconspirators and money launderers such as Augustine Ikolo - 0542-1:15-cr-00260-001 pled guilty to conspiracy to commit money laundery on January 27, 2016, he was sentenced to only 87 months in prison. The factual basis for the district court's determination in Mr. Eruotor's role in the offense is based on erroneous standard, where the court argued "that Mr. Eruotor started in the Canadian area and came down and did this", "that's why he's three on the list". Most circuits have adopted the clear error standard to review a district court's determination of a defendant's role in the offense. See United States v. Edwards, 321 U.S. App. D.C. 201, 98 F.3d 1364, 1371 (D.C. Cir. 1996)(mixed question); United States v. Thompson, 76 F.3d 442, 456-58 (2d Cir. 1996) (fact question); United States v. Lampkins, 47 F.3d 175, 180 (7th Cir. 1995) (question "heavily depended on the facts"); United States v. DeFranco, 30 F.3d 664, 669 (6th Cir. 1994)( fact question); United States v. Carr, 25 F.3d 1194, 1207 (3d Cir. 1994) ( mixed question.); United States v. Franco-Torres, 869 F.2d 797, 801 (5th Cir. 1989) (fact-question).

The Fifth  Circuit in United States v. Rodriguez De Varon, concluded that "the relevant statutory language explicitly recognize that a district court's determination of a defendant's role in the offense is essentially factual and such finding must be afforded deference", but the Court also recognizes that "the commentary to the Guidelines states that the determination of mitigating role in the offense "is heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2, comment. (backg'd).

15

The sentence imposed for a particular offense is based upon the applicable sentencing levels set forth in Chapter Two (offense conduct) of the conduct. The Rodriguez Court noted that a defendant is a minor participant if he "plays a part in committing the offense that makes him substantially less culpable than the average participant[s] . . . but [his] role could not be described as minimal." Id. cmt. nn. 3(A) & 5. The court also noted that "two basic principles guide the determination of whether a defendant should receive a role in the offense reduction for which he has been held accountable at sentencing, and, second, his role as compared to that of other participants in his relevant conduct. Rodriguez De Varon, 175 F.3d at 940.

Mr. Eruotor objects to the factual assertion regarding his role in the offense which make him appear to have had a greater role in the offense than is warranted by the facts. First, Mr. Eruotor was only hired by Mark Egorho and not by Ejiro Efevwerha, because Mr. Eruotor was personal friend with Mark Egorho but not with Ejiro Efevwerha. Secondly, characterizing his role as "hiring" money launderers such as Ikolo exaggerates their relationship. Mr. Eruotor is just a messenger for Mark Egorho, passing account information from Egorho to money launderers, such as Ikolo but never was the source of the account information, nor was he ever in charge or control of the Funds. He never received funds from the launderers, the "launderers" transferred funds to the account controlled by Mark Eghoro or Ejiro Efevwerha. Mr. Eruotor's involvement were only simple participation, he has no proprietary interest but the 5% interest he was paid as an errand person. He does not delegate authority.

The government argued that it put Mr. Eruotor number three in the hierarchy for a reason and they also understands that Mr. Eruotor is less culpable than most of the participants. The number one and two defendants were just friends and that is

where the jobs is basically were coming from to be distributed from him. See Sent. Tr. page 7, line 23-25. Mr. Euretor was placed as number 3 in organizational hierarchy because he is a friend to number one and two, not because he did what they said he did or his participation in the offense.

**E. DEFENSE COUNSEL RENDERED PREJUDICIALLY DEFICIENT PERFORMANCE IN VIOLATION OF THE PETITIONER'S FIFTH AND SIXTH AMENDEMNT RIGHT WHEN COUNSEL FAILED TO CHALLENGE THE METHOD OF "LOSS AMOUNT CALCULATION" BOTH DURING THE PLEA PROCESS, AND IN SENTENCING THE PETITIONER.**

Defendant Eruotor asserts that his attorney's performance prejudiced him, in violation of his Sixth and Fifth Amendment right in one aspect of his sentencing when counsel failed to challenge the PSI recommendation of his loss amount, and the district courts adoption of loss-amount calculation during sentencing.

First, Mr. Eruotor argues that both the probation department and the district court erred when it estimated the loss amount attributable to his crime to be $3,950,927 of laundered funds, which flowed through bank accounts controlled by various indicted and unidicted coconspirators, with whom Eruotor worked in concert, resulting in an eighteen-level enhancement. The PSI bears the burden of proving sentencing enhancements by a preponderance of the evidence. United States v. Ramos-Delgado, 763 F.3d 398, 400 (5th Cir. 2014). The method of PSR calculation of the loss amount created a spill-over effect and extremely complicated and the district court should have determined the Guideline offense level based on the amount of Mr. Eruotor' gain. By PSR's failure to engage in each coconspirator's role in loss amount, Mr. Eruotor was prejudiced at sentencing, at least where as here, the admission of related to similar acts by coconspirators. In United States v. Rosenwasser, 550 F.2d 806, 808-09 (2d Cir.), cert. denied, 434 U.S. 825, 98 S. Ct. 73, 54 L Ed. 2d 83 (1977), the Court noted that similar act evidence must be particularly scrutinized for its prejudicail spill-over effect on a codefendant. Mr. Eruotor argues that the PSR's analysis of bank records

17

and e-mails that produced $3,950,927 of laundered funds was prejudicial to him. Mr. Eruotor argued that the district court in calculating loss amount should have used the method of calculating loss amount within the factual circumstances presented, rather than a universal value. Section 2B1.1 comment. application note 2, directs that loss should be measured from the perspective of the victim. Foreexample, "'[L]oss' means the value of the property taken." U.S.S.G. § 2B1.1 cmt. n.2. The application note does not measure loss as the potential value obtained by the defendant. See United States v. Machado, 333 F.3d 1225, 1227 (11th Cir. 2003).

Mr. Eruotor argues that the loss amount attributed to him in calculating his sentence was excessive. The district court's conclusion was improperly made without reference to Eruotor's role in the conspiracy. See United States v. Medina, 485 F.3d 1291, 1297 (11th Cir. 2007) (reviewing loss-amount determination for clear error). Mr. Eruotor objected to the PSI through his attorney on a letter dated March 19, 2018 to Alejandro Ramos, Jr., United States Probation Officer. But Mr. Eruotor's attorney for reasons unknown to petitioner, later dropped the objections during the sentencing phase. The district court not considering Mr. Eruotor's objections, adopted the facts contained in the PSI. Eruotor objected to the PSI's assertion that he appears to have a greater role in the offense than is warranted. Petitioner objected that he is not a leader or organizer, neither is he a supervisor or manager. Those facts were objected with the PSI for sentencing purposes, See Sent. Tr., page 5 line 12-21; page 6 line 6-23. See also United States v. Bennett, 472 F.3d 825, 833-34 (11th Cir. 2006) (stating failure to object to factors found in a presentence investigation report (PSI) renders those facts admitted for sentencing purposes). Mr. Eruotor argues that he should be held accountable for a total loss of no more than $1,672,805.51. See United States v. Medina, 485 F.3d 1291, 1304-05 (11th Cir. 2007)

("a district court must make factual findings sufficient to support the government's claim of the amount of fraud loss attributed to a defendant in a PSI". See United States v. Gupta, 463 F.3d 1182, 1194 (11th Cir. 2006) (quoting marks ommitted). Mr. Eruotor ask the Court to reduce the enhancement to 12 level instead of 18, pursuant to § 2B1.1(b)(2)(B).

### F. PETITIONER WAS PREJUDICED FROM THE CUMULATIVE ERRORS OF COUNSEL'S INEFFECTIVE ASSISTANCE

The prejudice inquiry in this case centers on the question whether, but for Counsel's error, lack of diligence, unreasonable choices, unprofessional judgment, the petitioner would not have signed the plea agreement had he known that his counsel had not properly reviewed the plea agreement to discover the unlawful use of loss amount and unlawful enhancements by the district court and the probation department in petitioner's guideline calculation. Counsel failed to request for evidentiary hearing to properly decide petitioner's role in the offense and the loss amount attributable to the petitioner. Also, Counsel's failure to challenge the sophisticated means enhancement.

It is settled that, 'to be entitled to relief, the petitioner must independently demonstrate that, "Counsel's error resulted from "neglect or ignorance" rather than from informed professional judgment. Barrett v. U.S., 965 F.2d 1184, 1193 (1st Cir. 1992); United States v. Cronic, 466 U.S. 648, 658, 80 L. Ed. 2d 657, 104 S. Ct. 2039 (1984).

By failing to object to verify the loss amount, the aggregate role in offense and the sophisticated means enhancement, Counsel ceased to function as petitioner's advocate, and left the petitioner without counsel. Counsel should have known that as an advocate of the petitioner, Counsel had the constitutional responsibility of ensuring that the loss amount, aggregate role in offense and sophisticated means

enhancement are central to the determination of the petitioner's sentence. Thus, it was only proper for counsel to have ensured the Government and probation department met its burden of proof during sentencing. Pursuant to Counsel's constitutional responsibility, petitioner was entitled to reasonably competent assistance of counsel from pre-plea investigation and preparations through advocacy and sentencing. United States v. Garcia, 698 F.2d 21, 33-24 (1st Cir. 1983). Because of Counsel's failure, petitioner was enhanced 18 levels instead of 12 levels for loss amount, he was also enhanced 4 levels as an organizer or leader in the conspiracy and 2 levels for sophisticated laundery. Trial Counsel failed to object to these enhancement due to inattention and neglect. The probation department relied on an empirical data to support the enhancements, and counsel failed to discover and challenge the probation's (PSI)'s recommendation, hence, the district court adoption. A counsel keen on providing the effective assistance of counsel would notice that the probation department's recommendation of petitioner's role in the offense is nothing but speculation and no factual basis to support such enhancement. Counsel should have objected to the aggregate role enhancement. As a result, Counsel ceased to function as "effective" counsel within the meaning of the Sixth Amendment of the United States Constitution.

More specifically, the right to the effective assistance of counsel has been understood to mean that there can be no restrictions upon the function of counsel in defending a criminal prosecution in accordance with the tradition of adverssary fact-finding process that has been constitutionalized in the Sixth and Fourteenth Amendments. United States v. Cronic, 466 U.S. 648 (1984). Counsel therefore abandoned the petitioner when he failed to object to the violation of the petitioner's right to a fair sentence, and effective assistance during the sentencing phase of the case.

G.  <u>PETITIONER IS ENTITLED TO EVIDENTIARY HEARING</u>

The very essence of an ineffective assistance of counsel claim requires the court to look at matters outside the record. The purpose of evidentiary hearing is to "try issues of fact". Townsend v. Cain, 363 U.S. at 309. The Petitioner have raised issues of fact which needs to be determined by an evidentiary hearing, even with a request for the expansion of the record. The Sixth Circuit has stated that a habeas corpus proceeding alleging ineffective assistance of trial counsel is a mixed question of law and fact. Lewis v. Alexander, 11 F.3d at 1352; quoting Sims v. Livesay, 970 F.2d 1579; Stokes v. Singletary, 952 F.2d 1567 (11th Cir. 1992) (mixed question of fact and law are not accorded a presumption of correctness and hearing is granted). An evidentiary hearing is required "unless the [Court] trier of facts has after a full hearing reliably found the relevant facts. Fowler v. Jago, 683 F.2d 983, 987 (6th Cir. 1983); quoting Townsend v. Sain, 372 U.S. at 312-32. The rule is necessary because a federal habeas corpus court must ensure itself that the relevant facts were found and that the correct legal standard was applied to them. Flower v. Jago, 683 F.2d at 988.

Although the request for the Court to expand the record in the interest of clarity and fairness may be done by filing a separate motion, the petitioner hereby files for "leave of court" to request discovery and to expand the record to include exhibits, affidavits, and other articles during the proceedings pursuant to Rule 6 of the Rules Governing § 2255 proceedings. The exhibits and other documentation will be highly relevant and helpful in reading a fair determination on the issues before the Court.

The Supreme Court, in setting the standard for finding a Sixth Amendment violation flowing from the ineffective of trial counsel has

required defendants to establish an element of prejudice. Strickland v. Washington, 466 U.S. 668, 688-89 (1984). To avoid the hearing issue, it may be ultimately appropriate, should an evidentiary hearing be granted in this case, to obtain leave of this Court to serve interrogatories and admissions to secure the testimony of defense counsel which will assist the court in the disposition of the case.

Based upon the foregoing argument and authorities, and the entire record of this case, this Court is respectfully urged to grant the Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, Vacate and modify the sentence or at a minimum, grant Petitioner an evidentiary hearing on the instant motion.

## H.  <u>VERIFICATION</u>

I hereby verify that the foregoing pleading and argument is true and Correct to the best of my knowledge.

Dated: July 21, 2019

RESPECTFULLY SUBMITTED

Ochuko Sylvester Eruotor
BOP # 98555-380
Rivers Correctional Institution
P.O. Box 630
Winton, NC 27986

22