# EXHIBIT A

| | |
|---|---|
| STATE OF TEXAS | * |
| | *   KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF WILLIAMSON | * |

AFFIDAVIT

BEFORE ME, the undersigned authority, on this day personally appeared RUSSELL D. HUNT, JR., who after being by me duly sworn, did state on oath the following:

"My name is Russell D. Hunt, Jr. I am over eighteen years of age, suffer from no legal disabilities, and am capable of giving this my sworn Affidavit.

"I am writing to respond to specific allegations made by Ochuko Eruotor in a sworn petition for writ of habeas corpus, in which he generally asserts that my purportedly inadequate representation disadvantaged him at sentencing. I have reviewed my notes and I will respond to the issues he has raised in turn.

"My practice has entirely focused on criminal defense since before I was licensed in the state of Texas in 1994, and I have been Board Certified in Criminal Law by the Texas Board of Legal Specialization since 2000. I was admitted to practice in the Western District of Texas since 1995, and I am also licensed to practiced before the United States 5th Circuit Court of Appeals and the United States Supreme Court. I have been president of both the Austin and Williamson county criminal defense lawyers' associations. I handle both hired and court appointed cases and I am on the regional capital first-chair defender list, which means that I am eligible to receive appointments as lead counsel in cases where the State could seek the death penalty. I have been a member of the College of the State Bar for many years because I do many more hours every year of continuing legal education than the Texas State Bar requires.

"I represented Mr. Eruotor in trial court for his role in a prosecution involving a large group of Nigerian fraudsters who had engaged in a substantial series of frauds, and their related money-laundering operations. Mr. Eruotor plead guilty, cooperated with government agents, and hoped to obtain a sentencing reduction based on that cooperation. He agreed to waive his sentencing objections before and during the sentencing hearing, hoping instead to receive a post-sentencing reduction in sentence. Unfortunately, it has taken a significant amount of time for the U.S. government to persuade the Canadian government to extradite certain of their citizens against whom Mr. Eruotor would be able to provide information, so Mr. Eruotor has apparently decided to seek relief from his substantial sentence by accusing me of deficient performance.

"Virtually all of Mr. Eruotor's claims in the 2255 motion were waived at the sentencing hearing. Attorney Hunt had discussed the merits of his written objections with Mr. Eruotor in the Bastrop county jail the day prior to the sentencing hearing, and Mr. Eruotor agreed he would be best served by waiving the objections in order to avoid case agent testimony about the full scope of his involvement in the conspiracy. The specific sequence of events with respect to Mr. Eruotor's waiver of the objections is as follows:

"On 7/20/2018 Attorney Hunt filed a sealed motion to continue the sentencing hearing which was set on 7/27/2018, in hopes that Mr. Eruotor would be able to provide additional evidence against #1 co-conspirator Mark Ejiro and therefore receive the sentencing benefit of a

Section 5K1.1 motion.

"On 7/25/2018 Attorney Hunt conferred with court staff to learn that his continuance motion would be denied. Attorney Hunt then spoke with AUSA Galdo who indicated that he would argue at sentencing for a low-end guideline sentence, but that he would later file a Rule 35 sentencing reduction motion asking for a significant reduction in Mr. Eruotor's sentence after Mark Ejiro was brought to the country and prosecuted. AUSA Galdo also requested that Attorney Hunt inform him whether Mr. Eruotor was going to persist in his sentencing objections, because Mr. Galdo would then need to prepare his agents to testify in a sentencing hearing to counter Mr. Eruotor's factual assertions and sentencing objections.

"On 7/26/2018 Attorney Hunt met with Mr. Eruotor in the Bastrop county jail to explain the information he had learned from Attorney Galdo relating to his codefendant and the likely post-sentencing sentence reduction, and also to determine whether Mr. Eruotor would agree to waive his sentencing objections. The primary practical considerations that Attorney Hunt explained to Mr. Eruotor with respect to waiving the objections were that none of the objections was particularly well founded, and that if Government agents were to testify they would not only be likely to counter the objections, but they would also likely reveal information which would show Mr. Eruotor in an even more negative light than that portrayed in the PSR.

"Mr. Eruotor agreed that it was in his best interest to waive the objections which were likely to be overruled anyway. Mr. Eruotor understood that his greatest hope at achieving an ultimate sentence substantially lower than the guideline calculation in the PSR was not the court's granting of his PSR objections, but in the prospective Rule 35 motion.

"After meeting with Mr. Eruotor, Attorney Hunt called AUSA Galdo and informed him that Mr. Eruotor had agreed to waive the objections, so that there would be no need for Mr. Galdo to prepare case agents to testify or present evidence to counter Mr. Eruotor's objections to the PSR.

"At the sentencing hearing on 7/27/2018, Attorney Hunt informed the Court that Mr. Eruotor had decided to abandon his written objections (Sentencing Hearing Transcript Page 3). AUSA Galdo alluded to the fact of Mr. Eruotor's past and prospective cooperation (Sentencing Hearing Transcript Page 8). Mr. Eruotor understood the likely outcome of the sentencing hearing before it started, and hoped for an eventual Rule 35-based sentencing reduction. Mr. Eruotor ably allocuted at the sentencing, and did not mention that he had any concerns or reservations about waiving the sentencing objections.

"The specific allegations in the 2255 motion and my general responses are as follows:

"Claim 1: Failing to vigorously challenge the "sophisticated laundering" enhancement:

"The Court had already overruled this objection in codefendants' cases. The laundering was likely sophisticated: conspirators used multiple bank accounts, false names on those accounts, and they used accounts in Canada and Nigeria, which are "offshore" because they are located outside the U.S. banking system and cannot be traced. Mr. Eruotor agreed to waive this objection because it was destined to fail as it had for multiple previously-sentenced co-conspirators.

"Claims 2, 3 & 4: Role adjustment:

"Mr. Eruotor was friends with the two higher-level leaders of the conspiracy. Mr. Eruotor admitted in the factual basis that he had hired others to launder funds involved in the conspiracy, which is a factor to be considered in assessing a leadership role. A key factor in determining whether a leadership, as opposed to a management, enhancement should be imposed is "Recruitment of accomplices." The sentencing guidelines imply that management of co-conspirators results in a "leadership role," rather than simply managing accounts and non-human assets which may result in a lower "management" role enhancement.

"Mr. Eruotor's email accounts are replete with discussions which indicate that he had intimate knowledge of the specific mechanics of the various fraudulent schemes in the conspiracy and helped coach other conspirators and others about how to engage in those schemes and others outside the conspiracy. Between hiring co-conspirators and coaching fraud perpetrators it is clear that the leadership enhancement would have been applied.

"Mr. Eruotor agreed to waive the leadership objection both because he had no compelling basis to make the argument, and because agents would have been able to testify to facts that would have clearly established the above facts to counter his argument and to make clear to the court that he indeed did occupy a leadership role.

"Mr. Eruotor's complaint that he should have received a minor role adjustment is baseless because he obviously cannot both be a leader and have a minor role.

"5. Loss calculation:

"I explained to Mr. Eruotor that he could have been named in an even higher loss calculation. The amount of loss considered to be relevant conduct under the sentencing guideliens includes not only the actual loss caused to individuals by the specific defendant's direct and indirect actions, but also includes the intended loss, which is forseeable to the defendant, of the co-conspirators' actions across the entire conspiracy. Email traffic and other information indicated that Mr. Eruotor was aware of co-conspirators' attempted fraudulent schemes in total actual or intended amounts that far exceeded the amount to which Mr. Eruotor was assessed as relevant conduct.

"Mr. Eruotor agreed to waive the loss calculation objection in lieu of having agents testify against him, potentially proving up a far greater loss amounts and again portraying him in an even more negative light.

"I swear that the foregoing is true and correct to the best of my knowledge."

Russell D. Hunt, Jr.

SWORN TO AND SUBSCRIBED before me on this the 14th day of August, 2019.

NOTARY PUBLIC in and for the State of Texas

LORI FINNERTY
My Notary ID # 131494863
Expires March 20, 2022